UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUDEMARIO JOSAPHAT, JR.,<br><br>Defendant | Criminal No. 21-cr-10044-DJC<br><br>**Filed Under Seal**<br>(Leave to file under seal granted August 23, 2022) |

GOVERNMENT'S SENTENCING MEMORANDUM

The government respectfully submits this sentencing memorandum in connection with the sentencing of defendant Judemario Josaphat, Jr. Between approximately December 2017 and February 2018, the defendant participated in a bank fraud scheme that involved the use of fraudulent identification documents to withdraw funds, in the form of checks and cash, from individual customers' bank accounts, and negotiation of the fraudulently-obtained checks through accounts opened at other financial institutions in the names of fictitious business entities. Josaphat and his co-conspirators sought to withdraw over $800,000 from accounts at Santander Bank, resulting in actual loss to the bank of over $350,000. For his actions, the defendant should be sentenced to a term of imprisonment of 55 months followed by 36 months of supervised release and ordered to pay restitution to Santander Bank in the amount of $357,333.01.[1]

---

[1] This amount should be paid jointly and severally with the defendant's co-conspirators. Specifically, the total amount of $357,333.01 should be paid jointly and severally with Lajerran Long (20-cr-10308-MLW) and Carlyann Amos (19-cr-10355-DPW). A $115,407 portion of the total restitution amount should also be joint and several with Dave Guillaume, and a $223,926.01 portion should also be joint and several with Lindsley Georges (19-cr-10408-ADB).

I.  OVERVIEW OF THE OFFENSE CONDUCT

The bank fraud scheme referenced above targeted multiple financial institutions and has resulted in charges against 11 individuals.² Generally speaking, the participants in the scheme fall into the following categories: (1) individuals who developed and/or oversaw the scheme (*e.g.*, by planning and recruiting co-conspirators); (2) individuals ("runners") who were paid to go into banks and present fraudulent identification documents to withdraw funds from customers' accounts; (3) bank tellers who were recruited to facilitate the withdrawals by accepting the fraudulent identification documents without scrutiny; and (4) money launderers who opened accounts in the names of fictitious business entities and used those accounts to negotiate the fraudulently-obtained funds. Josaphat falls into the first category, as he – with the assistance of co-conspirator Lajerran Long – recruited Carlyann Amos, then a teller at Santander Bank, to facilitate fraudulent withdrawals from customers' accounts. The defendant then communicated directly with Amos to coordinate when and how the fraudulent transactions would take place.

On two separate occasions between December 2017 and January 2018, unidentified co-conspirators entered the Santander Bank branch in Weymouth where Amos was working, approached Amos, and falsely identified themselves as bank customers – in each instance, presenting a fraudulent driver's license that was in the customer's name but bore the runner's photograph. In total, the runners requested that $815,325 be withdrawn from the customers' home equity line of credit accounts, in the form of official bank checks and cash. At Josaphat's direction,

---

² Related defendants/cases include: Fesnel Lafortune (19-cr-10246-DPW), Carlyann Amos (19-cr-10355-DPW), Akeem Chambers (18-cr-10054-RWZ), Antonio Niati (18-cr-10341-MLW), Valnardia Novas (20-cr-10221-DPW), Lajerran Long (20-cr-10308-MLW), Lindsley Georges and Dave Guillaume (19-cr-10408-ADB), Emelyn Clough (21-cr-10171-FDS), and Emeka Iloba (21-cr-10233-LTS). The government has not uncovered evidence that each co-conspirator knew all other co-conspirators and/or all the conduct involved in the broader conspiracy.

Amos facilitated the requested transactions, knowing that the runners were not the customers they purported to be. Thereafter, co-conspirators Dave Guillaume and Lindsley Georges deposited some of the official bank checks – made payable to fictitious business entities – into accounts they had opened at other banks in the names of those entities and then, along with other co-conspirators, withdrew funds from those accounts, including significant cash withdrawals.[3] Josaphat paid Long approximately $5,000 for recruiting Amos to participate in the scheme.[4] Long, in turn, gave Amos approximately $2,000 as partial payment for her role in facilitating the fraudulent transactions.[5]

II.  THE APPLICABLE SENTENCING GUIDELINES

Josaphat pleaded guilty (without a plea agreement) to the two-count Indictment charging him with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count 1), and aiding and abetting aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2 (Count 2). With respect to Count 1, the government agrees with the Probation Office's conclusion, as set forth in the PSR, that Josaphat's total offense level under the Sentencing Guidelines is 21. That calculation reflects a base offense level of 7 under Section 2B1.1(a)(1); a 14-level increase, pursuant to Section 2B1.1(b)(1)(H), based on the intended loss attributable to the defendant's conduct; a three-level increase, pursuant to Section 3B1.1(b), based on the defendant's role as a

---

[3] As noted in the PSR, before all the funds were dissipated, Santander Bank was able to recover a significant portion, resulting in actual loss to the bank of $357,333.01. *See* PSR ¶ 23. Those funds remain unaccounted for. Notably, Josaphat's social media accounts depict him openly flaunting stacks of cash close in time to cash withdrawals from the accounts opened by Guillaume/Georges.

[4] The government does not have evidence of the amount of proceeds Josaphat derived from the offense.

[5] After Amos facilitated the first set of transactions, Josaphat told her that she would be paid $5,000 per set of transactions, but she ultimately received only the $2,000 from Long. As noted in the PSR, Josaphat attempted to coordinate a third set of transactions with Amos in February 2018, *see* PSR ¶ 22, but those transactions did not take place.

manager/supervisor in the offense; and a three-level decrease pursuant to Section 3E1.1 for acceptance of responsibility. The resulting guideline sentencing range is 37 to 46 months. With respect to Count 2, the guideline sentence is 24 months, to run consecutive to any term of imprisonment imposed for Count 1. *See* Section 2B1.6; PSR ¶ 36.

### III. THE GOVERNMENT'S SENTENCING RECOMMENDATION

The government respectfully recommends that the defendant be sentenced to 55 months of imprisonment followed by 36 months of supervised release and ordered to pay restitution in the amount of $357,333.01 (joint and several as set forth in footnote 1 above). The defendant's crime was serious and calls for a meaningful term of incarceration. He and his co-conspirators defrauded Santander Bank of hundreds of thousands of dollars. Their scheme had real victims – not only the bank that was defrauded, but the individuals whose identities were stolen to gain access to their accounts. Josaphat played an active role in the scheme, recruiting others to participate and coordinating the fraudulent transactions. A significant prison sentence is warranted not only due to the serious nature of the crime and for the purpose of just punishment, but to afford adequate deterrence. Others who may think it all too easy to fabricate and use fraudulent identification documents to access the accounts of bank customers, perhaps under the mistaken assumption that no true harm will result, must be assured that, when detected, their fraud will be met with serious punishment. Moreover, Josaphat himself must be deterred from reoffending, particularly in light of his arrest while on pretrial release. *See* Dkt. 56 (order revoking pretrial release).

Despite the foregoing, the government's recommendation of 55 months reflects a downward variance from the low end of the guideline sentencing range (*i.e.*, 61 months, after combining the low end of the range of 37 to 46 months on Count 1 with the mandatory 24-month sentence on Count 2), which is meant to avoid unwarranted sentencing disparities among

defendants in related cases. At the request of the Probation Office, the government previously prepared an overview of all related cases, including a basic summary of each defendant's conduct, how the cases are connected, and the procedural posture of each case. An updated version of that overview, which was submitted to other sessions of this Court in connection with sentencing, is attached hereto as Exhibit A. The government submits that the most relevant comparators for the purpose of sentencing Josaphat are Long and Amos, with whom he conspired directly, and Iloba, who played a similar albeit more central role in the scheme.

Josaphat is significantly more culpable than Long, whose conduct was essentially limited to making an introduction, and later a payment, to Amos. Long – who promptly agreed to accept responsibility upon being charged by complaint, waiving indictment and pleading guilty to an information – was sentenced to nine months in prison. While Amos played a crucial role as a bank teller in facilitating the fraudulent withdrawals described above, she did so at Josaphat's direction, after being recruited by him and Long. Further, Amos promptly acknowledged her role in the scheme ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ While Amos ultimately received a sentence of time served, the government recommended a term of imprisonment of 20 months. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Iloba, the primary target of the government's investigation, played a central role in the scheme, recruiting others to participate and orchestrating both the front-end withdrawals from customers' bank accounts and the laundering of funds through accounts at other financial institutions in the names of fictitious business entities. Iloba's total offense level under the Sentencing Guidelines was 23 (two levels higher than Josaphat's due to a higher intended loss

amount), resulting in a guideline sentencing range of 46 to 57 months, plus 24 months for aggravated identity theft. The government recommended a sentence of 49 months for Iloba. Iloba was ultimately sentenced to 33 months in prison. A longer sentence is warranted for Josaphat, because Iloba had no issues while on an extended period of pretrial release while Josaphat was arrested on drug and other charges, resulting in the revocation of his release.[6]

The government believes that the recommended sentence of 55 months appropriately balances these considerations and is sufficient but not greater than necessary to achieve the purposes of sentencing in this case.

---

[6] Guillaume and Georges – who laundered the proceeds of the bank fraud scheme by opening accounts in the names of fictitious business entities, depositing fraudulently-obtained funds into those accounts, and then withdrawing a portion of the funds – each received a sentence of time served. The government recommended a sentence of 37 months for both defendants, but the Court in that case declined to impose prison sentences for various reasons, including because a significant period of time had elapsed since both the criminal conduct and the charges, neither defendant had any issues while on an extended period of pretrial release, and both had made progress toward college degrees and/or held steady employment during that period. Notably, in sentencing Lafortune, also a money launderer, another session of the Court adopted the government's recommendation of 31 months,

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to a term of imprisonment of 55 months followed by 36 months of supervised release and order restitution in the amount of $357,333.01.

          Respectfully submitted,

          RACHAEL S. ROLLINS
          United States Attorney

By:   /s/ Leslie A. Wright
       LESLIE A. WRIGHT
       Assistant United States Attorney

### Certificate of Service

I hereby certify that this document was filed under seal with the Clerk of Courts on September 6, 2022, and will be sent via email to the Probation Office and counsel of record for the defendant.

By:   /s/ Leslie A. Wright
       LESLIE A. WRIGHT
       Assistant United States Attorney